Good morning, your honors. Eric Grant for the Plaintiffs' Inappellence. With me is my co-counsel David Rosen. I am going to try to save two minutes from rebuttal. In this case, your honors, the need for plaintiff's anonymity outweighs any possible prejudice to the defendants and the abstract public interest in knowing the identities of these minor children. Based on this record, what's here that we can weigh honestly and come to a different conclusion than a reasonable trial judge did? Your honor, this court's primary dispute between the parties is the reasonableness of the fears of plaintiff's parents of severe harm. Isn't that quite an essential decision made by a district court? Your honor, this court reviews that court's decision for an abuse of discretion, and as advanced textile, the case that everybody agrees controls, says at page 1069, a district judge abuses his discretion in this context if he takes an erroneous view of the law, makes an erroneous assessment of the evidence, or strikes an unreasonable balance of the factors. We think we've shown that in focusing very narrowly on isolated individual statements apart from the entire factual context, the judge below did take an erroneous view of the law. This court's cases, particularly the en banc decision in Planned Parenthood in 2002, instructs courts to look at the entire factual context to make a decision about whether a threat is true or genuine as opposed to noise out there. Well, what would you isolate? Assuming we look at the entire record, what are the strongest elements of what would be a true threat under the Planned Parenthood analysis? What would you isolate? I don't mean as an individual statement, but focusing on the worst of the threats, what is it that you're saying is so clearly a threat that the district court erred as a matter of law or fact? Yes, Your Honor, and we've summarized those on page 24 of our opening brief, and briefly, there's a history of actual and indeed severe physical violence against children with the common thread of the epithet, Effen Howley. How is this any different than the situation faced by the named plaintiffs in civil rights cases such as Brown v. Court of Education or Hunter, the cases in which the children plaintiffs used their own names in spite of all of the violence and difficulties that occurred during the civil rights era? There is that history, Your Honor, of plaintiffs suing in their own names, and defendants have done a good job of citing you all those cases, but I think what advanced textile says is instead of looking at generalities, we look at the facts of each particular case, and in addition to that history of violence with the epithet that I... How is that different, though? How are your clients in any more difficult situation, more threatening situation, than were those named plaintiffs in the kinds of cases that I just mentioned, which were also minors, which were also in the educational context? Because part of your attempt has been to say, well, we can't look at adults, the terrorists, the communists, all those people who sued in their own names, so that's why I'm focusing on the cases involving educational opportunities for children. Well, Your Honor, we don't know, and the facts aren't in the record, the specifics of each of those individual cases. The facts in this record are, again, the epithets, the fact that the plaintiff in the previous challenge, that this court heard en banc, the previous Doe case, declared under penalty of perjury that if their identities were made known, they would go into hiding. There are the statements about sacrificing the children, stringing up the lawyers, the fact that the kids will need bodyguards, the fact that these four effing Howleys will get the lickings they deserve, the email and the phone call to Mr. Rosen last October after the magistrate judge issued his original decision. Again, that's the factual context here, and as opposed to abstractions about other children in other cases with unknown factual scenarios, that's the scenario here. And I submit that what advanced textile says is anonymity is reserved for unusual cases and special circumstances. And those facts that I've catalogued, again, on page 24 of our opening brief with some more detail at pages 10 through 14 of our opening brief, I think those show, and I think certainly a reasonable parent concerned for the physical safety of his or her children would reasonably believe that those show a threat to the physical well-being of their children. And I tried to think of an analogy, and one that I came up with is that in unusual cases and special circumstances, members of this court receive additional protection from the U.S. Marshals Service. It's rare. It's unusual. But I think it happens. I was in San Francisco last week arguing, and we had five additional marshals in the courtroom. If you or your chambers were to receive those kinds of communications that Mr. Rosen received, would it be reasonable to go to the Marshals Service? Maybe it wouldn't. I don't know. But would it be reasonable? Now, members of this court have that protection, and for good reason. But these parents don't have that kind of protection. What they have under the law, particularly advanced textile, is the cloak of anonymity. And particularly in a case like this one where there's no prejudice to the defendants, that cloak, it is reasonable for ---- Let me ask you a hypothetical question. Your argument on the merits is premised on the fact that there are no non-Hawaiian children at the Kamehameha schools. And were you to succeed and the Doe children replaced there, how do you think they would remain anonymous? They wouldn't remain anonymous, Your Honor. They would have the benefit of the civil rights ruling to which we believe they're entitled. You think the threats would go away and all would be well? If you think that they would not be subject to harm, if you win the lawsuit and they actually go to the school and are visible there, I don't understand how, looking backwards, you argue that they must be protected now. I think it's fair, Your Honor, to say that if they receive the benefit of a ruling and they're going to go to school at Kamehameha schools, as we hope and expect, they can't be anonymous at school. And quite frankly, we've never thought that they're going to be unsafe at the school. The school doesn't have an absolute bar against their admission, as I understand it. There are some non-qualified, so to speak, students that are there under the scholarship. Isn't that correct? No, Your Honor. As this court found in its en banc ruling, there essentially is an absolute bar. Since 1962, only two students that lack Hawaiian ancestry. There are some students, right, who are there and they're not abused. I do not believe there are any students there right now, Your Honor, and I'm hoping I can save the final minute for rebuttal. Certainly, you may do that. May it please the court, my name is Kathleen Sullivan and I represent the Appalese, the Kamehameha schools, and its trustees. This is not a case that involves any abuse of discretion or clear error with respect to the magistrates and the district courts. Careful and exhaustive findings below that the normal presumption in favor of parties suing in their own names should be applied here. This is not a case of exceptional circumstances in which there is any severe threat of retaliation or physical, mental, or financial harm. Well, that's the conclusion, but factually there are these epithets on the Internet and a variety of threats that are out there. The question is whether they should be taken seriously enough. If you're a reasonable person in a parents and children's situation to say that the price of asserting a claim to admission to the school is to be subjected to threats of violence once your name is known, and it is a bit troublesome. We know if we want to talk about Brown versus Board of Education that the consequences of trying to integrate a school can be very severe. Severe, the Little Rock Nine and all of that history. So the fact that those plaintiffs chose to proceed not anonymously, we don't know why. We don't know whether they asked for such protection. But isn't the integration of a school by children at this age something we could generally agree, if it's unpopular, that the kids could be harassed? Kids get bullied in school for lots of other reasons. So this would be a particularly likely one. I understand that there's no claim that they will be bullied on the school. I understand that. But I'm just talking about the reasonableness of the parents' assessment on a going-forward basis. Judge Fischer, there is, as you point out and as Mr. Grant just conceded, there is no anticipated fear of violence at the Kamehameha schools. If you look at supplemental excerpts of Record 32C02, those have conceded that they don't anticipate any violence at the Kamehameha schools, nor should they. In the prior case, was the identity of the students made public? In one, yes, Judge Beeser. In the Mohica Cummings case, the identity of one of the challengers to the policy, who eventually attended the school and was there for five years conceivably without incident. In fact, Mr. Grant said in the press on excerpts of Record page 86 that he was doing great at the school. So Mohica Cummings joins the long line of cases that Judge Graber referred to, in which it was Brown v. Board of Education, Runyon v. McCrary, Mohica Cummings v. Kamehameha schools. And he attended the schools not only without any violent or retaliatory incident at the schools, Your Honors, but there was no incident against Mohica Cummings in the broader community, nor was there against Kalani Roselle. And, Judge Beeser, you're quite correct. Another student not of Hawaiian descent attended the Maui campus. And the school's bylaws or trust instrument permits the admission of persons without required blood content to enter the school if there is a space available. Is that correct? That's exactly right, Judge Beeser. That's correct. But just returning, Judge Fischer, to your question about ambient threats, I must disagree with Your Honor that there was any finding of any kind of threat below. If we look at the record, the magistrate judge to whom the district court deferred found no clear error, to whom this court should defer to the district court's ruling if there's no abuse of discretion, the magistrate judge and the district court who are close to the community, who know what amounts to hyperbolic vernacular about effing Halleys, a term that was Mr. Rosen used to refer to himself in excerpts of record page 96 in an op-ed. The district judge and the magistrate judge know how to discount what is hyperbolic vernacular in this community. That's a little disingenuous to cite his statement. I can call myself an effing Halley, but I'm not the one against whom the term was used in a pejorative way in a context where the threat is to take action against an unpopular plaintiff for the challenge to a policy of the school. The U.S. attorney, as I understand it in the prior case, actually had to go out and urge the public to calm down and stop these kinds of threatening statements. I can't sit here and say I'm not from Honolulu or Hawaii. I don't know. And I do take your point about the magistrate judge and the district judge being here and being able to assess the community. But when the U.S. attorney in the past has said this kind of language and threats is in effect threatening to these plaintiffs, I think there's an intimidation factor and a potential harm factor. I'm troubled by the notion because Brown v. Board of Education and Runyon and all the other cases that somehow now civil rights plaintiffs as a price of going forward in school integration cases historically are determined to have to suffer the consequences even when we know that there can be violence directed against children in unpopular causes. Judge Fischer, there is no evidence in this record that those threats were directed at the children. The magistrate judge isolated eight Internet comments that even mentioned the plaintiffs. Many of the comments, and to find these eight comments, the plaintiffs had to call through literally hundreds if not thousands of Internet comments, many of which were supportive of the children, many of which said we wish no harm to the children, many of which were explicit about being made in jest. It's the Halloween spirit laughing out loud. Many of which were directed at the lawyers, not the plaintiffs. And as the magistrate found, even the plaintiffs concede that threats to lawyers who put themselves forward in their own name as civil rights litigators are not the kinds of comments that should be basis for making the plaintiffs anonymous. If you look at the only statements that are directed supposedly at the does, some explicitly disclaim any wish to harm the children, and the others the magistrate judge found in factual context looking at the factual record as a whole that they were hyperbolic vernacular, idle chatter, nonsensical remarks, the kind of bluster and false bravado that anonymous Internet bloggers engage in. And this is, if you were to find eight anonymous Internet comments a basis for granting anonymity, you would reverse the presumption. The presumption is in favor of disclosure of the names. Anonymity is the rare exception. If Internet bloggers can cause you to grant anonymity over a district court's careful affirmation of a magistrate judge's findings, then it's an invitation to plaintiffs to saturate the Internet with their own hostile comments. There is no case that plaintiffs can cite in any other jurisdiction that finds a grant for anonymity on remotely similar facts. And just to draw the contrast with advanced textile and Planned Parenthood, advanced textile involved guest workers from Saipan working as virtual prisoners in factories with brutal conditions that they could protest only on pain of job loss, deportation, arrest and imprisonment back in China. There were targeted threats by the employer itself in the record in that case that led this court to grant the rare case of anonymity. Planned Parenthood, to which Mr. Grant alluded, which did closely divide an online panel of this court in any event, involved threats in the form of the names and addresses and photographs of doctors who performed abortions with ones who had been killed X'd out with a black line and those that had been injured rendered in gray. There's nothing remotely like any of those facts in this case. And there's no other case that the defendants have been able to cite anywhere in the country where anonymity has been granted. It's been rejected by the district courts in cases like the Beaumont School District and the Merton case. It's been rejected in cases even where plaintiffs have concern about revelation of their illegal alien status or their religious beliefs. And the only case in which it was ever granted, anonymity was ever granted by a district court, Doe v. Stiegel in the Fifth Circuit, a very old case long before the Internet, involved threats to plaintiffs who challenged religious policies at a public school where there had been a town meeting where people in a virtual lynch mob made targeted threats out loud at the plaintiffs themselves, not mere anonymous comments on the Internet. So to force a grant of anonymity in this case would be the first time ever that anonymous Internet comments or a supposed anonymous phone call was the basis for requiring an anonymity for school children. As to the other factors, Mr. Grant referred to the outweighing of the threat, and we would suggest there's no threat in this record, just idle chatter, fulmination, hyperbolic vernacular nonsense on the Internet. There's no threat at all. There's no reasonable fear, therefore. And even though we concede, of course, that vulnerability of children is something to take into account, the magistrate did take it into account and said it wasn't enough. But defendants didn't even argue, Judge Beezer, before the district court that the magistrate erred with respect to the prejudice we suffer in trying to challenge standing. And the last point, Judge Fischer, is just when U.S. Attorney Cubo talked about protecting children five years ago, we have a lot of experience since then. And if you focus on nothing else in this record, I would urge you to see the reasonableness of the magistrate's finding in light of the fact that Kalani Rossell went for five years to our Maui campus. Brain Mohica Cummings went for five years to our Oahu campus with no harm to a hair on their heads from anyone on campus or anyone else in the community. So those outdated concerns are really not present in this record, and you should affirm. Thank you, counsel. Thank you very much for having us. Mr. Grant, you have some time remaining. Thank you, Your Honor. It's not mere idle chatter, random, on the Internet. It was a telephone call to Mr. Rosen personally, an email to him, and Internet comments directed specifically at the magistrate judge's ruling about anonymity in this case. I would also submit, Your Honor, I think page 234 of volume two of the excerpts of records, it's a picture of this girl who was beaten and called an Ethan Howley. This is not made up. Again, I think if taking this entire context, if something like this came to you or your chambers, you would naturally, you would reasonably consider it to be unusual circumstances. Counsel, this case strikes me as being one in which the standard of review is going to be very important because in a close case, if the district court had decided to permit your clients to proceed anonymously, I would think it would be very hard to find an abuse of discretion on that side. But if we're looking at abuse of discretion, to some extent, don't we have to, I guess this is a repeat of Judge Beezer's question, don't we have to give considerable weight to the fact that the judges who made these factual and weighing decisions are intimately familiar with this community? I understand that argument, Your Honor, but I think what's required here is a little bit of perspective, a little bit of stepping back from being in this community. And perhaps the three judges of this panel coming to it fresh, looking at these things, I hope saying, something's wrong here, this is unusual. Don't we have the experience in this community, in the Mammoth School, of the plaintiffs being known to the public at the time the other case was on its way up to the Supreme Court? One plaintiff was, Your Honor. The other plaintiffs, John Doe and Jane Doe, who did go up through your court to the Supreme Court. Did the known plaintiff have any particular problems in the community of a physical nature? Braden Mohica Cummings did not, Your Honor. John and Jane Doe said under penalty of perjury that if their identities were revealed, they would move and go into hiding. I see my time has expired, and I would urge this Court to reverse the judgment of the District Court. Thank you. Thank you, Counsel. The arguments of the parties have been most helpful, and this case is submitted. The second case on our docket is submitted on the briefs. That's Marumoto v. Onani Apolliona. And the third case on our docket, number 0816769, has been submitted on the briefs. But the remainder of the case is on for argument, and that is Curlew Ewie v. Lingle. And if you'll just wait a minute until the courtroom is settled down, that would be helpful. Okay, whenever, Counsel, are ready, you may proceed.
judges: Beezer, Graber, Fisher